UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CARLOS ABREU,

                                          Plaintiff,

            v.                                                        9:14-CV-1529
                                                                      (GLS/RFT)

DR. KOOI, et al.,

                                          Defendants.

_____

APPEARANCES:                              OF COUNSEL:

CARLOS ABREU
99-A-3027
Plaintiff, pro se
Sullivan Correctional Facility
Box 116
Fallsburg, NY 12733

HON. ERIC T. SCHNEIDERMAN               HEATHER R. RUBINSTEIN, ESQ.
New York State Attorney General         Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

GARY L. SHARPE
Chief United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

            Pro se plaintiff Carlos Abreu commenced this action in New York State Supreme

Court, Cayuga County, against ten defendants all alleged to be employees of the New York

State Department of Corrections and Community Supervision ("DOCCS").  Plaintiff asserts

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"); Title II of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Title V of the Rehabilitation Act of 1973

("Rehabilitation Act"), 29 U.S.C. § 794 et seq.; the Religious Land Use and Institutionalized

Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1; the Administrative Procedure Act

("APA"), 5 U.S.C. § 701 et seq.; the Civil Rights of Institutionalized Persons Act of 1980

("CRIPA"), 42 U.S.C. § 1997, as amended in 1996 by the Prison Litigation Reform Act; and

state law.  *See* Dkt. No. 3 ("Compl.").  Defendants removed this action from state court on

December 17, 2014, and paid the required filing fee.[1]  Dkt. No. 1.

## II.    DISCUSSION

### A.    State Court Order Granting Poor Person Status

Title 28 of the United States Code, Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under this section if the
> prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of
> the United States that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief may
> be granted, unless the prisoner is under imminent danger of
> serious physical injury.

28 U.S.C. § 1915(g) ("Section 1915 (g)).[2]  Plaintiff has filed more than twenty civil actions in

---

[1]  The Notice of Removal states that "[n]one of the defendants named in the complaint have been personally served with the summons and complaint, nor have they acknowledged receipt of the same."  Dkt. No. 1 at 2.

[2]  The term "prisoner" is defined for purposes of 28 U.S.C. § 1915 to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). Plaintiff states that he was released from DOCCS custody in January 2014, upon the expiration of his twelve-year sentence, and, prior to his transfer to Auburn Correctional Facility in March 2014, he had been civilly detained at the Central New York Psychiatric Center. Dkt. No. 3-1 at 72. Plaintiff also states that beginning on March 20, 2014, he was confined at Auburn Correctional Facility, having been charged with violating the conditions of his post-release supervision. *Id.*  Information available on the public website maintained by DOCCS shows that plaintiff was convicted of first degree assault, first degree rape, and first degree attempted rape and his maximum expiration date of his sentence is now February 6, 2019. *See* http://nysdoccslookup.doccs.ny.gov. Based upon the foregoing, the Court finds that plaintiff was a "prisoner" within the meaning of the statute when he commenced this action in state court, as well as when it was removed to federal court.

district courts in this Circuit since 2008.[3]  This Court previously found that prior to the date

that plaintiff commenced this action in state court, at least three of plaintiff's actions and

appeals were dismissed as frivolous and/or for failure to state a claim upon which relief could

be granted, and therefore the Court concluded that plaintiff had acquired at least "three

strikes" for purposes of 28 U.S.C. § 1915(g).  *See Weathers, et al. v. Travers*, No. 9:12-CV-

1582 (GLS/RFT), Dkt. No. 63 at 8-9; *see also Abreu v. United States of America*, No.

9:11-CV-1104 (LEK/DEP), Decision and Order, (N.D.N.Y. Jan. 3, 2012) (finding Abreu had

three strikes under Section 1915(g)).[4]

However, in this case, plaintiff was granted permission to "prosecute this civil action as

a poor person" in state court before this action was removed to federal district court.  *See*

Dkt. 1-4 at 1-2.  "Removed proceedings arrive in federal court in the procedural posture they

had in state court."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006); *see*

*also Nasso v. Seagal*, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2002) ("Upon removal, the orders

entered by the state court are treated as though they have been entered by the federal

court.").[5]  Thus, plaintiff will be allowed to proceed with this removed action in forma pauperis

---

[3]  *See* U.S. Party/Case Index  <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl > (last visited May 4, 2015).

[4]  The actions or appeals found to constitute "strikes" are: *Abreu v. Disability Advocates, Inc.*, No. 1:09-CV-6306, Judgment (S.D.N.Y. July 15, 2009) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Disability Advocates, Inc.*, No. 1:09-CV-6306, Mandate (2d Cir. Dec. 3, 2009) (dismissing appeal because it lacks an arguable basis in law or fact); *Abreu v. Supreme Court of Bronx County*, No. 1:10-cv-1310, Judgment (S.D.N.Y. Feb. 18, 2010) (dismissing complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Supreme Court of Bronx County*, No. 1:10-CV-1310, Mandate (2d Cir. Aug. 12, 2010) (dismissing appeal because it lacks an arguable basis in law or fact).

[5]  However, after removal, a federal court may dissolve or modify any order entered by the state court. *See* 28 U.S.C. § 1450 ("Whenever any action is removed from a State court to a district court of the United States . . . all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County*, 415 U.S. 423, 437 (1974) ("Section 1450 . . . recogniz[es] the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had

at this juncture.[6]

### B.    Review of the Complaint

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) .

. . the court shall dismiss the case at any time if the court determines that – . . . (B) the action

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B).[7]  Thus, even if a plaintiff meets the financial criteria to commence an action in

forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly

maintain the complaint that he filed in this District before the court may permit the plaintiff to

proceed with this action in forma pauperis.  *See id*.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil

action in which a prisoner seeks redress from a governmental entity or officer or employee of

─────────────────────

in state court prior to removal.").

   [6]  In light of the fact that defendants paid the $400.00 filing fee when they removed this action from state court, and because the question of whether a three strikes plaintiff may continue his state court pauper status in federal court when he did not initially bring the action in federal court presents a novel issue, the Court chooses to not to  address the issue sua sponte.  *See Lisenby v. Lear*, 674 F.3d 259, 262-63 (4th Cir. 2012) (In reversing a District Court's decision to remand a case involving a three-strike plaintiff back to state court, the Fourth Circuit stated: "We recognize that the district court will now again be faced with the precise dilemma it grappled with in its original order, to wit, whether Plaintiff's cause of action may be dismissed under the PLRA or whether it must be heard on the merits.  Plaintiff argues that he did not 'bring' the action in federal court, and Defendants paid the filing fee upon removal, suggesting that, aside from his status as a 'three strikes' prisoner, the plain language of § 1915(g) is inapplicable to the situation presented here.  That question, however, is not squarely before us here, and we properly leave it for the district court to determine in the first instance."); *see also Lloyd v. Benton*, 686 F.3d 1225, 1228 (11th Cir. 2012) (leaving the same question open).  For different reasons, the district courts in *Lisenby* and *Lloyd* never addressed the issue.  *See Lisenby v. Lear*, No. 5:09-CV-0410, 2013 WL 3762953 (D.S.C. July 16, 2013); *Lloyd v. Benton*, No. 3:10-CV-0559, 2014 WL 897045 (M.D. Fla. Mar. 6, 2014); *but compare Riggins v. Kuoy,* No. 14-CV-0215, 2014 WL 3764156, at *3 (S.D. Ala. July 30, 2014) (concluding that the three strikes bar in § 1915(g) should apply even where the three striker files the case in state court and then the action is removed to federal court) (citing cases).

   [7]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

4

a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the

5

factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] *Id.*

## C. Sufficiency of the Complaint

Plaintiff's complaint sets forth alleged wrongdoing that occurred during his confinement at Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl. The following facts are set forth as alleged in by plaintiff in the complaint.

Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven C.F.") from March 2013 through January 2014, and was prescribed orthopedic medical boots, a back brace, a wrist brace, nasal spray, E-lotions/creams, liquid soap, prescription eye glasses, and pain medication for chronic pain in his back, ankle, stool, and hand. Compl. at 5. Plaintiff had also been scheduled for physical therapy, surgery for his right hand, and a colonoscopy "due to bleeding and pain from his stool/anus [and] rect[um]." *Id.*

On January 29, 2014, plaintiff was transferred to the Central New York Psychiatric Center. *Id.* On March 4, 2014, plaintiff fractured/broke his right hand. *Id.* at 5. Dr. Shiv Bhatt (not a defendant) operated on plaintiff's right hand on March 11, 2014, at Rome

---

[8] When conducting a review under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court may also consider whether the claims asserted by the plaintiff are duplicative of claims asserted in another action against the same defendants. "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Some of the claims asserted in this action may be duplicative of claims asserted in *Abreu v. Miccuci*, No. 9:14-CV-0658 (MAD/DEP) (N.D.N.Y. filed June 3, 2014). Plaintiff's complaint in that action has not been screened pursuant to 28 U.S.C. § 1915A(b) because his in forma pauperis application was denied pursuant to 28 U.S.C. § 1915(g) and he has been order to pay the full filing fee of $400.00 or that case will be dismissed. *See id.*

Memorial Hospital. *Id*. Dr. Shiv and the medical staff at Rome Memorial Hospital prescribed plaintiff pain medication in the form of two Ultram plus, to be taken every six hours. *Id*.

On March 20, 2014, plaintiff was transferred to Auburn C.F. *Id*. at 6. From the date of his arrival at Auburn C.F. until April 2014, when he filed the present complaint, defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, and Graham were deliberately indifferent to his serious medical needs including chronic pain in his back, ankle, hand, and stool and blood in his stool. Compl. at 7-10. On March 12, 2014, DOCCS Central Office held that plaintiff could wear his orthopedic boots in the Special Housing Unit ("SHU"). *Id*. at 12. Despite this, defendants have refused to provide plaintiff with his medical boots. *Id*. Plaintiff gave the Central Office decision to defendants Gilfus and Donnolly, but they ignored it. *Id*. at 13. Plaintiff also sent copies of the decision to defendants O'Connor-Ryerson, Graham, and Thomas, but they have not responded to plaintiff's request to return his boots. *Id*.

Plaintiff's problems at Auburn C.F. SHU started in 2007 through 2008 when plaintiff filed a lawsuit against the defendants for similar misconduct and succeeded in obtaining a monetary award. *Id*. From that date forward, "Auburn C.F. administration and staff have retaliated." *Id*. Plaintiff also filed multiple grievances and complaints against the defendants and other Auburn C.F. staff from 2007 to the date he filed the complaint in 2014. *Id*. Every time that plaintiff was placed in Auburn C.F. SHU, the "defendants and other[] staff intentionally . . . retaliated against plaintiff mainly [by] den[ying] medical care, mental health treatments, writing false reports against him, [making] threats, placing him in bad cells, den[ying] his religio[us] meals [and] medical items, turn[ing] off cell waters" and denying recreation, his property, and legal papers and books. *Id*. at 15.

7

When plaintiff was transferred to Auburn C.F. on March 20, 2014, he did not have a SHU sentence but was nonetheless placed in SHU. *Id*. at 15. Plaintiff wrote to defendants Graham, Thomas, and Donnolly complaining that he should not be in SHU, and although they agreed with him, they told him that they did not want him in general population. *Id*. at 17. Plaintiff remained in SHU for five days, beginning with his arrival at Auburn C.F. on March 20, 2014, without any report, notice, hearing, or explanation. *Id*. at 18.

On March 25, 2014, plaintiff was recommended for placement in administrative segregation in SHU, and a correctional officer was assigned to assist him with the administrative segregation hearing. *Id.* at 17. The assistant failed to provide plaintiff with "proper and obligated assistance all intentionally . . . planned" by defendant Graham. *Id*. Defendant Thomas conducted the administrative segregation hearing in an "arbitrary [and] capricious" manner and "in retaliation denied all [of plaintiff's] request[s]." *Id*. at 18. The recommendation that plaintiff be placed in administrative segregation was accepted by defendant Thomas, and affirmed by defendant Graham. *Id*. at 17. "[T]he decision/determination was planned." *Id*. at 18.

Defendants Graham, Donnolly, Thomas, Gilfus, and Green retaliated against plaintiff by confiscating his legal materials and personal property. *Id*. at 19. The denial of his legal materials has interfered with his litigation and "several of his cases. . . have been dismissed due to his inability [to] answer, respond or prepare his legal works." *Id*. at 24.

The Auburn C.F. law library has a policy of not sending legal books to SHU inmates, but sends them to general population inmates, which denies SHU inmates access to the courts and violates equal protection. *Id*. at 25. Defendants Thomas and Graham are in

charge of the law library program.  *Id*. at 26.

Defendants Donnolly, Green, Gilfus, and Graham have denied plaintiff access to the property he is entitled to have in SHU including his shower shoes and sufficient toilet paper. *Id*. at 22-23.  Because plaintiff did not have his shower shoes, he developed foot fungus.  *Id*. at 22.  Additionally, he only receives one roll of toilet paper per week, even though DOCCS regulations say that toilet paper will be replaced as needed, requiring plaintiff "to clean [his] butt with [his] fingers" when he runs out.  *Id*. at 23.

On April 14, 2014, defendants Graham, Donnolly, Thomas, Gilfus, and Green refused to allow plaintiff, a practicing Jew, to participate in the Jewish holy day of Passover by denying him Passover meals, even though plaintiff had told defendant John Doe, the Rabbi at Auburn C.F., that he wanted to receive Kosher meals and participate in Passover.  *Id*. at 19.  Plaintiff complained in writing to defendants Graham, Thomas, and John Doe about being denied Passover meals but they failed to respond or correct the matter.  *Id*. at 20.

Construed liberally, the complaint asserts the following causes of action: (1) Eighth Amendment medical indifference claims against defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly,[9] and Thomas; (2) ADA and Rehabilitation Act claims against defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly, and Thomas; (3) Fourteenth Amendment due process claims against defendants Graham, Thomas, and Donnolly regarding plaintiff's five-day confinement in SHU and against defendants Graham and Thomas regarding plaintiff's placement in administrative segregation; (4) First Amendment retaliation claims against all defendants; (5) Fourteenth

---

[9]  Plaintiff's complaint refers to this defendant as both "Donnolly" and "Connolly."  Because he is identified in the list of defendants as "Donnolly," this Order will also refer to him as Donnolly.

9

Amendment due process claims against defendants Graham, Donnolly, Thomas, Gilfus, and

Green for depriving plaintiff of his property; (6) First Amendment denial of access to the

courts claims against defendants Graham, Donnolly, Thomas, Gilfus, and Green; (7) Eighth

Amendment conditions of confinement claims against defendants Donnolly, Green, Gilfus,

and Graham; (8) First Amendment Free Exercise and RLUIPA claims against defendants

Graham, Donnolly, Thomas, Green, Gilfus, and John Doe; (9) Fourteenth Amendment equal

protection claims against defendants Thomas and Graham; (10) a claim under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; and (11) a claim under the

Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997.[10]  Plaintiff

seeks monetary damages and declaratory relief.  *Id*. at 30.  For a complete statement of

plaintiff's claims, refer to the complaint.

### 1. Eighth Amendment Medical Indifference

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege

that the defendant was deliberately indifferent to a serious medical need.  *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components,

one objective and the other subjective.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996).  Objectively, the deprivation must be "sufficiently serious," creating a risk of "death,

degeneration, or extreme pain."  *Id*.  Subjectively, the official must have the requisite state of

mind, which is the "equivalent of criminal recklessness."  *Id*.

### a. Defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, and Graham

Among other things, plaintiff claims that defendants Kooi, Boyd, O'Connor-Ryerson,

---

[10]  Plaintiff also asserts that his rights were violated under state law.  Compl. at 29.

Jane Doe, and Graham denied plaintiff his prescribed orthopedic medical boots, back brace, wrist splint/hand brace, and prescription glasses, all which were previously prescribed to him "by experts and doctors," as well as his requests for a colonoscopy, nasal spray, lotions/creams, and antibacterial liquid soap that were prescribed to him at Green Haven C.F. *Id*. at 7-10.  Plaintiff also asked the same defendants for Ultram Plus but they told him that Ultram is not allowed in SHU.  *Id*.  Plaintiff needs his Ultram for chronic pain; nasal spray for allergies; lotions/creams and soap for skin allergies and dry skin; a colonoscopy for blood in his stool and pain; and physical therapy for back, wrist, and hand pain.  *Id*. at 10-12.  Without his prescription eyeglasses, which have been missing since August, 2014, he suffers from migraine headaches, eye pain, and blurred vision.  *Id*. at 11-12.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the Eighth Amendment medical indifference claims against defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, and Graham survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### b. Defendants Gilfus, Donnolly, and Thomas

The objective component for an Eighth Amendment medical indifference claim requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway*, 99 F.3d at 553 (internal quotation marks omitted).  Construed liberally, plaintiff alleges only that he told defendants Gilfus, Donnolly, and Thomas that he was being denied

11

the use of his prescribed orthopedic boots despite the fact that he had a permit to wear them in SHU, but they ignored the information and did not provide plaintiff with his boots.  Compl. at 13.  Accepting plaintiff's allegations as true, plaintiff fails to allege facts sufficient to satisfy the objective prong of the deliberate indifference standard with respect to his claims against defendants Gilfus, Donnolly, and Thomas.  "Indeed, courts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy that prong."  *Stevens v. City of New York*, No. 12 Civ. 3808, 2013 WL 81327, at \*2-3  (S.D.N.Y. Jan. 8, 2013) (granting motion to dismiss plaintiff's claim that defendants were deliberately indifferent to his health by making him wear footwear that caused him pain); *Williams v. Dep't of Corr.*, No. 11 Civ. 1515, 2011 WL 3962596, at \*4 (S.D.N.Y. Sept. 7, 2011) (holding that discomfort caused by wearing poorly constructed shoes with no support does not constitute a condition of confinement that . . . poses an excessive risk to a prisoner's health or safety").

Plaintiff's Eighth Amendment medical indifference claims against defendants Gilfus, Donnolly, and Thomas are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## 2.  ADA and Rehabilitation Act

The ADA and Section 504 of the Rehabilitation Act are applicable to inmates in state correctional facilities.  *Allah v. Goord,* 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).  To state a claim under Title II of the ADA, a plaintiff must allege that: (1) he is a "qualified individual" with a disability; (2) the defendants are subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities,

or were otherwise discriminated against by defendants, by reason of plaintiff's disability.[11]
*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  The same elements must be alleged to establish a violation under Section 504 of the Rehabilitation Act, and, in addition, the plaintiff must allege that the defendants receive federal funding.  *Id*.  Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that "[t]he real party in interest in an official-capacity suit is the government entity").

Accordingly, there is no legal basis for plaintiff's ADA or Rehabilitation Act claims against defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly, and Thomas in their individual capacity, and those claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Insofar as plaintiff may allege ADA and Rehabilitation Act claims against defendants Kooi, Boyd, O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly, and Thomas in their official capacities, plaintiff simply alleges these defendants denied his requests for various medical supplies and treatment.  He provides no facts to plausibly suggest that he suffers from a disability as that is defined under the ADA and the Rehabilitation Act.  *See O'Neill v. Hernandez*, 2009 WL 860647, at *5 (S.D.N.Y. Mar. 31, 2009) (granting motion to dismiss plaintiff's complaint for failure to state an ADA or Rehabilitation Act claim because he

---

[11]  "Under the ADA, Congress has defined 'qualified individual with a disability' as an individual with a disability 'who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (quoting 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104).

provided "no facts in support of his claim that he is 'considered disabled'").  Even if plaintiff

could allege that he suffers from a disability, he has failed to allege facts to suggest that he

was denied medical supplies and treatment on account of a disability, or that he was denied

access to services or programs, or otherwise discriminated against, on account of a

disability.

Plaintiff's ADA and Rehabilitation Act claims against defendants Kooi, Boyd,

O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly, and Thomas in their official

capacities are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for

failure to state a claim upon which relief may be granted.

### 3. Fourteenth Amendment Due Process Claims Regarding Confinement

To successfully state a claim under Section 1983 for denial of due process arising out

of segregated confinement, a plaintiff must show that he both (1) possessed an actual liberty

interest, and (2) was deprived of that interest without being afforded sufficient process.  *See

Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d

Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91

F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court

determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1)

the State actually created a protected liberty interest in being free from segregation; and (2)

the segregation would impose an "atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80;

*Hynes,* 143 F.3d at 658.  To determine whether an inmate has suffered an "atypical and

significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

While not the only factor to be considered, the duration of a confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, *see Colon*, 215 F.3d at 232 n.5, the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

### a. SHU Confinement For Five Days

Plaintiff complains that defendants Graham, Thomas, and Donnolly had him confined in SHU for five days without notice or a hearing. Compl. at 18. However, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court

15

found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id*. Courts in this Circuit have consistently held that SHU or keeplock confinement under ordinary conditions for thirty days or less do not rise to a level sufficient to establish a due process claim. *See Smart v. Goord*, 441 F.Supp.2d 631, 640 (S.D.N.Y. 2006) ("[T]he decisions in the Second Circuit are unanimous that keeplock . . . of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*." (internal quotation omitted)); *Ochoa v. DeSimone*, No. 9:06-CV-0119 (DNH/RFT), 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (thirty days SHU and keeplock); *Escalera v. Charwand*, No. 9:04-CV-0983 (FJS/DEP), 2008 WL 699273, at *8 (N.D.N.Y. Mar. 12, 2008) (thirty days keeplock); *Thompson v. LaClair*, No. 9:08-CV-0037 (FJS/DEP), 2008 WL 191212, at *1 (N.D.N.Y. Jan. 22, 2008) (thirty days keeplock, loss of recreation, packages, commissary and phone privileges).

Plaintiff's Fourteenth Amendment due process claims against defendants Graham, Thomas, and Donnolly regarding his five-day SHU confinement are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Administrative Segregation

With respect to his administrative segregation, plaintiff alleges that defendant Thomas conducted plaintiff's administrative segregation hearing in an "arbitrary and capricious" manner and denied all of plaintiff's requests "in retaliation," and the correctional officer assigned to assist him failed to provide adequate assistance, which inadequate assistance was "planned" by defendant Graham. Compl. at 17-18. Defendant Thomas ordered plaintiff

placed in administrative segregation. *Id*. The decision was affirmed by defendant Graham. *Id*. Plaintiff alleges that his placement in administrative segregation was "planned." *Id*. Plaintiff alleges no facts to indicate either the duration of his administrative segregation or to suggest that his segregated confinement constituted an atypical and significant hardship. Thus, plaintiff fails to allege sufficient facts to plausibly suggest that he was denied a liberty interest when placed in administrative segregation.[12]

Plaintiff's Fourteenth Amendment due process claims against defendants Graham and Thomas regarding his administrative segregation are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. First Amendment Retaliation

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between

---

[12] *See Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005) (Rep't and Recommendation), *adopted and approved* (slip decision Apr. 21, 2015) ("[W]here no liberty interests are at stake, no procedures are required.").

the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that he was retaliated against for filing grievances and lawsuits, thus he has alleged that he participated in protected activity. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases) (the filing of a grievance or lawsuit is protected by the First Amendment). Nonetheless, plaintiff's complaint contains only conclusory allegations that defendants' various actions were in taken "retaliation" for his grievances and complaints are insufficient, without more, to plausibly suggest such a claim. *See*, e.g., Compl. at 14 (alleging that he obtained a monetary award prior to 2008 and since then staff at Auburn C.F. "have retaliated" against him); *id.* at 15 (every time plaintiff was placed in Auburn C.F. SHU, defendants "retaliated" against him); *id.* at 18 (defendant Thomas denied plaintiff's requests at the administrative segregation hearing "in retaliation"); *id.* at 19 (plaintiff's property was confiscated in retaliation). Plaintiff has failed to plead any facts suggesting retaliation. *See Anderson v. Lapolt*, No. 9:07-CV-1184 (DNH/RFT), 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) ("A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.'") (quoting *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000)); *Flaherty*, 713 F.2d at 13 ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.").

Plaintiff's retaliation claims are dismissed in their entirety pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Fourteenth Amendment Due Process Regarding Property

The Supreme Court has held that the unauthorized intentional destruction or taking of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

Plaintiff's Fourteenth Amendment due process claims against defendants Graham, Donnolly, Thomas, Gilfus, and Green regarding the confiscation of his property are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. First Amendment Denial of Access to the Courts

The Constitution guarantees prisoners meaningful access to the courts.[13] *See Lewis*

---

[13] Inmates have a First Amendment right to "petition the Government for a redress of grievances." *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

*v. Casey,* 518 U.S. 343, 351 (1996); *Bounds v. Smith,* 430 U.S. 817, 828 (1977); *Morello v. James,* 810 F.2d 344, 346-47 (2d Cir. 1987).  This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds*, *Lewis*, 518 U.S. at 350.

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353.  "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb.17, 1999).  Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16.  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and

a like plain statement should describe any remedy available under the access claim and presently unique to it."  *Id.* at 417-18 (footnote omitted).

Here, plaintiff alleges that because he was denied access to his legal materials "several of his cases . . . have been dismissed due to his inability [to] answer, respond or prepare his legal works."  Compl. at 24.  Plaintiff's allegations in this regard are wholly conclusory.  Plaintiff fails to provide any information in the complaint about the basis for these lawsuits, where they were filed, what relief he sought, or how the missing legal material actually frustrated his effort to litigate them.  Plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because his legal papers were taken.  *See Lewis*, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."); *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999) ("A prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to courts claim. . . . [S]ome showing of impaired access is required.").

Accordingly, plaintiff's First Amendment denial of access to the courts claims against defendants Graham, Donnolly, Thomas, Gilfus, and Green are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### 7.  Eighth Amendment Conditions of Confinement

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v.*

*Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441

U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).  "To the extent that

such conditions are restrictive and even harsh, they are part of the penalty that criminal

offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981).  Not every governmental action affecting the interests or well-being of a prisoner is

actionable under the Eighth Amendment.  "To be cruel and unusual punishment, conduct

that does not purport to be punishment at all must involve more than ordinary lack of due

care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see*

*also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).  To demonstrate that the

conditions of confinement constitute cruel and unusual punishment in violation of the Eighth

Amendment, a plaintiff must satisfy both an objective and subjective element.  *See Jolly v.*

*Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  A plaintiff must demonstrate that (1) the

conditions of confinement resulted in "unquestioned and serious deprivations of basic human

needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480,

and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S.

294, 303-04 (1991).

Plaintiff alleges that defendants Donnolly, Green, Gilfus, and Graham denied him

access to his shower shoes, causing him to develop foot fungus, and only gave him one roll

of toilet paper per week, even though DOCCS regulations say that toilet paper will be

replaced as needed.[14]  Compl. at 22-23.  Plaintiff's "conditions claims" do not constitute

---

[14]  The law is settled that the failure to follow a DOCCS Directive or prison regulation does not give rise to a federal constitutional claim. *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001).

serious deprivations of basic human needs.  *See Rhodes*, 452 U.S. at 347 (Routine

discomfort and restrictive or even harsh prison conditions "are part of the penalty that

criminal offenders pay for their offenses against society"); *see also Hudson v. McMillian*, 503

U.S. 1, 9 (1992).  Plaintiff's allegations also do not plausibly suggest that any defendant

acted with the requisite deliberate indifference.

Plaintiff's Eighth Amendment conditions-of-confinement claims against defendants

Donnolly, Green, Gilfus, and Graham are therefore dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may

be granted.

### 8. First Amendment Free Exercise and RLUIPA

For a claim under both the First Amendment Free Exercise Clause and RLUIPA, a

plaintiff must demonstrate that his or her sincerely held religious beliefs were substantially

burdened by defendants' conduct.  *Singh v. Goord,* 520 F. Supp. 2d 487, 498, 509 (S.D.N.Y.

2007); *see also Salahuddin v. Goord*, 467 F.3d at 274-75 (To prevail on a free-exercise

claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens

his sincerely held religious beliefs.").  In order to be considered a "substantial burden," the

plaintiff "must demonstrate that the government's action pressure[d] him to commit an act

forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious

experience mandated by his faith."  *Muhammad v. City of N.Y. Dep't of Corr.,* 904 F. Supp.

161, 188 (S.D.N.Y. 1995) (citations omitted).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be

liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the First

Amendment Free Exercise and RLUIPA claims against defendants Graham, Donnolly,

Thomas, Green, Gilfus, and John Doe survive sua sponte review and require a response.  In

so ruling, the Court expresses no opinion as to whether these claims can withstand a

properly filed motion to dismiss or for summary judgment.

### 9.  Fourteenth Amendment Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

under the law.  Essential to that protection is the guarantee that similarly situated persons be

treated equally.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Specifically, the Equal Protection Clause "bars the government from selective adverse

treatment of individuals compared with other similarly situated individuals if 'such selective

treatment was based on impermissible considerations such as race, religion, intent to inhibit

or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*,

627 F.2d 606, 609-10 (2d Cir. 1980)).  In the alternative, under a "class of one" theory, a

plaintiff must allege that he has been intentionally treated differently from others similarly

situated, with no rational basis for the difference in treatment.  *Village of Willowbrook v.

Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003);

*Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).  "'[C]lass-of-one plaintiffs must show

an extremely high degree of similarity between themselves and the persons to whom they

compare themselves.'"  *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59

(2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

"'Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational

person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" *Id*. (quoting *Clubside, Inc.*, 468 F.3d at 159).

Plaintiff alleges that the law library at Auburn C.F., which is under the control of defendants Thomas and Graham, has a policy of not sending books to SHU inmates, but sends them to inmates in general population.  Plaintiff's conclusory allegations do not plausibly suggest that he was treated differently because of his membership in a suspect or identifiable class, or for other impermissible reasons, or that he was treated differently than similarly situated individuals.  Indeed, the group that plaintiff compares himself to — general population inmates — is not comprised of similarly situated individuals.  *See Green v. McLaughlin*, 480 F. App'x 44, 47-48 (2d Cir. 2012) (affirming dismissal of inmate's class-of-one claim for failure to compare himself to inmates sufficiently similar)[15]; *Ruston*, 610 F.3d at 60 (affirming dismissal of class-of-one claims in a zoning dispute because plaintiff had failed to plead "specific examples of Town proceedings, let alone applications that were made by persons similarly situated" and because the comparative examples of Village proceedings were not sufficiently similar).

---

[15]  In *Green*, plaintiff (who had been taken off of medical hold and transferred to another facility) described the inmates to which he compared himself as "other inmates at Green Haven with medical holds," and "other inmates with acute medical problems."  480 F. App'x at 47.  The Second Circuit concluded that "[n]either of these broad categories is sufficient to demonstrate the level of specificity required by class-of-one claims as they do not permit an inference that the members of these classes are 'so similar [to Green] that no rational person could see them as different. . . . Most importantly, Green ha[d] not identified any other similarly situated inmates with diabetes whose medical holds were not rescinded and who were allowed to remain at Green Haven."  *Id.* at 47-48 (citing *Village of Willowbrook*, 528 U.S. at 564 (plaintiff must allege that he "has been intentionally treated differently from others similarly situated") (internal citation omitted)).

Accordingly, plaintiff's Fourteenth Amendment equal protection claims against defendants Thomas and Graham are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Administrative Procedure Act

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq, provides for judicial review of certain agency action.  Under the APA, an "'agency' means each authority of the Government of the United States."  5 U.S.C. § 701(b)(1).  Clearly, the APA "does not purport to affect the review processes of state agencies or commissions."  *Johnson v. Rodriguez*, 943 F.2d 104, 109 (1st Cir. 1991) (citing *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1048 (9th Cir. 1979) (APA does not create private cause of action against a municipal agency, not part of the federal government).  Here, construed liberally, plaintiff may be attempting to challenge decisions made by DOCCS, who is not named as a defendant.  Even if DOCCS were named, plaintiff fails to state a claim under the APA, because New York State DOCCS is not a federal agency.

Plaintiff's Administrative Procedure Act claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Civil Rights of Institutionalized Persons Act

Plaintiff also seeks to assert a claim under 42 U.S.C. § 1997, the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), amended in 1996 by the Prison Litigation Reform Act.  *See* Compl. at 26.  But "[p]laintiff may not assert a cause of action under § 1997, because this statute only creates a cause of action for the Attorney General of the

United States." *Laureano v. Vega*, No. 92 CIV. 6056, 1994 WL 68357, at *6 (S.D.N.Y. Feb. 25, 1994); *see also McDonald v. Rivera*, No. 9:06-CV-0410 (LEK/DEP), 2008 WL 268345, at *11 (N.D.N.Y. Jan. 30, 2008) (CRIPA does not provide a private right of action); *Miller v. Carpinello*, No. 06 CV 12940(LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007) (same).

Plaintiff's claim asserted under CRIPA is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 12.  John/Jane Doe Defendants

The court notes that plaintiff has named "John/Jane Doe" defendants in his complaint. Plaintiff is advised that service of process cannot be effected on a "John or Jane Doe" defendant.  In the event plaintiff wishes to pursue his claims against these defendants, plaintiff shall take reasonable steps to ascertain their identities.  Plaintiff may seek to determine the identity of "John Doe" and "Jane Doe" defendants through discovery.  When plaintiff determines the identity of the "John Doe" or "Jane Doe" defendants, plaintiff may seek to amend his pleading to add the properly named defendants pursuant to Federal Rule of Civil Procedure 15.  Plaintiff is further advised that if these unnamed individuals are not timely served, the action may be dismissed against them.

### III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief

may be granted:  (1) the ADA and Rehabilitation Act claims against defendants Kooi, Boyd,

O'Connor-Ryerson, Jane Doe, Graham, Gilfus, Donnolly, and Thomas in their individual

capacities; (2) the Administrative Procedure Act claim; and (3) the claim asserted under the

Civil Rights of Institutionalized Persons Act of 1980;[16] and it is further

 **ORDERED** that the following claims survive sua sponte review and require a

response:  (1) the Eighth Amendment medical indifference claims against defendants Kooi,

Boyd, O'Connor-Ryerson, Jane Doe, and Graham and (2) the First Amendment Free

Exercise and RLUIPA claims against defendants Graham, Donnolly, Thomas, Green, Gilfus,

and John Doe; and it is further

 **ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

relief may be granted;[17] and it is further

 **ORDERED** that upon receipt from plaintiff of the documents required for service of

process, the Clerk shall issue summonses and forward them, along with copies of the

complaint, to the United States Marshal for service upon defendants Kooi, Boyd,

O'Connor-Ryerson, Graham, Donnolly, Thomas, Green, and Gilfus.  The Clerk shall forward

a copy of the summons and complaint by mail to the Office of the New York State Attorney

---

[16]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).  The amendment of these claims would be futile.

[17]  Should plaintiff wish to amend any claim dismissed without prejudice, he may file an amended complaint in accordance with Federal Rule of Civil Procedure 15.  Plaintiff is advised that any amended complaint must be a complete pleading that will replace the original complaint in its entirety, and may not incorporate by reference any portion of the original complaint.  *See* N.D.N.Y. L.R. 7.1(a) (4).  Any amended complaint filed will be subject to review under 28 U.S.C. § 1915(e)(2)(B).

General, together with a copy of this Decision and Order; and it is further

      **ORDERED** that defendants Kooi, Boyd, O'Connor-Ryerson, Graham, Donnolly, Thomas, Green, and Gilfus, or their counsel, respond to the remaining claims set forth in the complaint as provided for in the Federal Rules of Civil Procedure; and it is further

      **ORDERED** that plaintiff take reasonable steps to ascertain the identity of the "John/Jane Doe" defendants, and when identified, seek to amend the complaint to add them as defendants pursuant to Federal Rule of Civil Procedure 15(a); and it is further

      **ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

      **ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

May 11, 2015
Albany, New York

                                      *Gary L. Sharpe*
                                     Gary L. Sharpe
                                     Chief Judge
                                     U.S. District Court