**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARLOS ABREU,

                     Plaintiff,

    - v -                                                      Civ. No. 9:14-CV-1529
                                                                          (GLS/DJS)

DR. KOOI, *Auburn Correctional Facility*, *et al.*,

                     Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

CARLOS ABREU
Plaintiff, *Pro Se*
99-A-3027
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. ERIC T. SCHNEIDERMAN           AIMEE M. PAQUETTE, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. BACKGROUND

     On December 17, 2017, Defendants removed *pro se* Plaintiff Carlos Abreu's civil action to this District Court from the New York State Supreme Court, County of Cayuga. Dkt. No. 1, Notice of Removal. By this action, Plaintiff alleges that while he was in the custody of the New York State Department of Corrections and Community Supervision

("DOCCS") and incarcerated at Auburn Correctional Facility, the Defendants violated his rights secured by several federal statutes, including, but not limited to, 42 U.S.C. § 1983.[1] Dkt. No. 2, Compl. After an initial screening of the Complaint was completed, resulting in a dismissal of some claims, the named Defendants were served with process and subsequently filed an Answer. *See* Dkt. Nos. 6, 12-17, 20, & 24. Upon receipt of Defendants' Answer, the Court issued a Mandatory Pretrial Discovery and Scheduling Order, which, *inter alia*, set forth the various deadlines governing the progression of this case toward trial. Dkt. No. 25. The Order further explained the type of discovery that would be exchanged between the parties, and provided permission to the Defendants, pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), to take Plaintiff's deposition. *Id*. at p. 5. With regard to such deposition, the Order also contained the following admonition:

> **PLAINTIFF(S) SHALL TAKE NOTICE that** disagreement with any directive of security staff at the correctional facility at which the deposition is scheduled is not a ground on which Plaintiff(s) may refuse to answer appropriate questions. The failure of the Plaintiff(s) to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to FED. R. CIV. P. 37. Objections made in good faith in accordance with governing rules are not prohibited.

*Id*. (emphasis in original).

It is clear that Plaintiff received and reviewed this Order as evidenced by the fact that it had

---

[1] Additionally, Plaintiff raised claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.; Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.; the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. § 2000cc-1; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; the Civil Rights of Institutionalized Persons Act ("CRIPA") of 1980, 42 U.S.C. § 1997; as well as various State laws. Dkt. No. 3, Compl.; Dkt. No. 6. Following the initial screening, performed by the Honorable Gary L. Sharpe, Senior United States District Judge, the Plaintiff's Eighth Amendment and First Amendment claims under 42 U.S.C. § 1983 and free exercise claim pursuant to RLUIPA survived while all other claims were dismissed, either with or without prejudice. Dkt. No. 6.

not been returned to the Court as undeliverable, and by the fact that Plaintiff specifically cites to this Order in a Letter-Motion he filed with the Court on October 5, 2015, wherein he discussed mandatory disclosure obligations. Dkt. No. 32.

On December 28, 2015, Defendants' Counsel filed a Status Report noting that Defendants' mandatory disclosure obligations had been satisfied on December 23, 2015, and that depositions were scheduled for February 24, 2016. Dkt. No. 38. However, prior to that February deposition date, Defendants filed a Motion seeking dismissal of the action, due in part to Plaintiff's ineligibility to proceed with a case in federal court *in forma pauperis* having previously accumulated three strikes pursuant to 28 U.S.C. § 1915(g). Dkt. No. 41. On August 4, 2016, I issued a Report-Recommendation and Order wherein I recommended denying Defendants' Motion, Dkt. No. 49, and, on September 7, 2016, that recommendation was adopted by the Honorable Gary L. Sharpe, Senior United States District Judge, Dkt. No. 52, and the case continued through the discovery phase of the litigation.

On January 10, 2017, the Court held a telephone conference with the parties to address certain Letter-Motions filed by Plaintiff about discovery disputes. Dkt. Nos. 54, 58, & 59. At Plaintiff's request, and as directed by the Court, a Spanish interpreter was present for the proceeding. After hearing from both parties, the Court rendered several rulings on the record which were thereafter memorialized in a written Order. Dkt. No. 62. Amongst the various topics discussed was the Defendants' desire to schedule Plaintiff's deposition. In light of the potential for Plaintiff being moved, the Court directed that Plaintiff's deposition be held as soon as practicable, and further directed Defendants to enlist the aid of a Spanish interpreter

during the Plaintiff's deposition. *Id*. at p. 2.

On February 9, 2017, the Court received a Letter-Motion from Plaintiff, dated February 7, 2017, indicating that he had been transferred to Great Meadow Correctional Facility and that all his legal materials had been confiscated. Dkt. No. 66. Plaintiff explained that he had received Defendants' Notice, dated February 1, 2017, to take his deposition on February 17, 2017, at 9:30 a.m., and he expressed concern that he would not be able to produce the paperwork required per that Notice. *Id*. at pp. 1-2. Plaintiff therefore asked the Court to stay the deposition. *Id*. Defendants' Counsel responded that despite the particular wording of the deposition notice, she would not require specific documentation from Plaintiff during the deposition. Dkt. No. 67.

On February 16, 2017, I issued an Order denying Plaintiff's request for a stay of the deposition and reminded Plaintiff that in accordance with the Federal Rules of Civil Procedure and the Court's Mandatory Pretrial Discovery and Scheduling Order, Plaintiff is obligated to participate in good faith at the deposition and that his failure to attend, be sworn, and participate in good faith would result in sanctions. Dkt. No. 70. Because the deposition was set to occur the following date, the Court directed Defendants' Counsel to read the Order into the record at the beginning of the deposition. *Id.*

Plaintiff did not appear at the deposition scheduled for February 17, 2017, and after reading the Court's Order into the deposition record, the Defendants' Counsel adjourned the deposition. On March 13, 2017, Defendants filed a Motion, pursuant to Federal Rule of Civil Procedure 37, seeking sanctions in the form of dismissal or, alternatively, some monetary

sanction due to Plaintiff's failure to appear and participate in his properly noticed deposition. Dkt. No. 74. Plaintiff filed his opposition to the Motion, Dkt. No. 76, to which Defendants replied, Dkt. No. 79, and Plaintiff submitted a Sur-Reply, Dkt. No. 82.

## II. DISCUSSION

### A. Legal Standard

By their current Motion, Defendants ask the Court to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 37 for his failure to abide by Court Orders and attend his properly noticed deposition. Dkt. No. 74. In asking for sanctions, the Defendants specifically seek dismissal of the action, but alternatively propose a monetary sanction be imposed.

Rule 37 authorizes an array of sanctions to be imposed when a party fails to comply with a court order. FED. R. CIV. P. 37(b)(2); *see also* N.D.N.Y.L.R. 1.1(d) ("Failure of . . . a party to comply with any provision of these Rules, General Orders of this District, Orders of the Court, or the Federal Rules of Civil or Criminal Procedure shall be a ground for imposition of sanctions."). Sanctions are also available for a party's failure to attend his own deposition. FED. R. CIV. P. 37(d)(1)(A)(i).

Included as a sanction in Rule 37(b)(2) is the remedy of dismissal against the disobedient party. FED. R. CIV. P. 37(b)(2)(A)(v). "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations . . . ., and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir.1994) (quoting *Bobal v. Rensselaer*

*Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir.1990), *cert. denied*, 499 U.S. 943 (1991)). The criteria of willfulness or bad faith "imply a deliberate disregard of the lawful orders of the court." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067 (2d Cir. 1979) (quoted in *Quiles v. Beth Israel Medical Ctr.*, 168 F.R.D. 15, 18 (S.D.N.Y. 1996)). As specifically noted by the Second Circuit, "while pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation, they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). Furthermore, the "special solicitude" afforded to *pro se* litigants "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Id*. Nevertheless, dismissal is appropriate "only if alternative, less drastic sanctions are inappropriate, . . . and the court has warned the *pro se* litigant that this sanction might result from continued misconduct." *Mercado v. Div. of New York State Police*, 989 F. Supp. 521, 524 (S.D.N.Y. 1998) (citing various Second Circuit decisions, including *Valentine v. Museum of Modern Art*, 29 F.3d at 49 & *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d at 764).

### B. Application to the Facts

Initially, I note that it is uncontroverted that on several occasions this Court has directed Plaintiff to submit to a deposition, starting first with the Mandatory Pretrial Discovery and Scheduling Order, which Plaintiff clearly received, and then again during the

January 10, 2017, telephone conference.[2] It is also undisputed that Plaintiff did not attend his February 17, 2017 deposition. According to Defendants' Motion, on February 16th, the day before the scheduled deposition, Assistant Attorney General ("AAG") Aimee Paquette received an email from an employee at the Great Meadow Correctional Facility indicating that Plaintiff was "seriously acting up" and had requested to go to observation; the employee stated she was uncertain whether Plaintiff would cooperate with attending the deposition the following day. Dkt. No. 74-1, Aimee Paquette, Esq., Decl., at ¶ 16 & Ex. B. On the following date, at approximately 9:57 a.m., seventeen minutes after the scheduled start time for the deposition, AAG Paquette received a call from that same facility employee who informed her that Plaintiff refused to attend the deposition. *Id.* at ¶ 17. Counsel then read the Court's Order into the record, noted Plaintiff's refusal to attend, and adjourned the deposition. *Id.* at ¶ 18.

In opposition to Defendants' Motion, Plaintiff submitted a thirty-page meandering handwritten response, full of conflicting excuses, disturbing recriminations against an array of individuals whom he deems responsible for his absence, and wholly inappropriate banter concerning women. *See generally* Dkt. No. 76. Having reviewed the Plaintiff's response, I am troubled for many reasons, but particularly by the Plaintiff's willingness to skew facts in an effort to deceive the Court. I note that it is clear that Plaintiff received proper notice

---

[2] On a third occasion, the Court directed Plaintiff to attend and participate in his February 17th deposition, and denied his request to stay that deposition. Dkt. No. 62. However, having issued that decision just prior to the deposition date, and because Plaintiff failed to attend that deposition, I acknowledge that Plaintiff did not receive that Order prior to February 17, 2017.

of the date and time for the deposition, as he admits having carefully read the Notice. *Id*. at pp. 3 & 9. Yet, he vacillates between various excuses for his absence, first due to the failure of the facility to provide him with his legal materials, then due to a failure of the Court to timely respond to his request to stay the deposition, then because of a recent assault, and finally due to a failure of the facility employees to inform him of the opportunity to attend the deposition. *Id*. at pp. 10 & 13.

According to Plaintiff, on February 15, 2017, two days before the scheduled deposition, he suffered an assault at the hands of two corrections officers, and that during the course of this physical assault, he was sexually assaulted by one of the officers. *Id.* Plaintiff asserts that on February 16th, he reported the assault to mental health staff, but contrary to the information provided in Defendants' Motion, he, in fact, refused offers to go to the mental health unit for observation because he feared for his safety and because, as he proclaims to have told the facility staff, he had a deposition scheduled for the next day. *Id*. at p. 12. Conveniently, according to Plaintiff, facility staff informed him that his deposition would likely be cancelled because he could not leave his cell until the Inspector General's Office investigators arrived to interview him on February 17, 2017. *Id*. Plaintiff then claims that on the morning of February 17, he was advised that the investigators want to talk to him and that his deposition had been cancelled by them; interestingly, just one page later in his written submission to the Court, Plaintiff claims that no one asked him if he wanted to go to his deposition and was unaware that the AAG was waiting to depose him. *Id*. at pp. 12 & 13.

To counter many of Plaintff's assertions, AAG Paquette filed a Reply, which

contained supporting documentation, including a video taken of the Plaintiff on the morning of February 17, 2017, as well as excerpts from Plaintiff's Ambulatory Health Records ("AHR"). *See generally* Dkt. No. 79.

The AHR medical notes reveal that on February 15, 2017, at approximately 10:45 a.m., Plaintiff was seen by medical staff in the special housing unit ("SHU") after an incident occurred wherein use of force was employed by officers who extracted Plaintiff from his cell.[3] Dkt. No. 79-4 at p. 7.[4] The Court presumes this is the assault incident described by Plaintiff in his opposition papers. Dkt. No. 76 at pp. 10-11. According to the AHR excerpts, it appears that on the following date, February 16, 2017, Plaintiff was interviewed regarding his allegation that one of the officers sexually assaulted him during the February 15 altercation.[5] Dkt. No. 79-4 at p. 7. To be clear, in citing to this portion of Plaintiff's AHR, I am not rendering any assessment as to whether the February 15th (sexual) assault occurred nor whether such allegations are actionable, either civilly or criminally. My sole purpose in

---

[3] The Court is unaware of the reason for the cell extraction. According to the AHR entries, Plaintiff complained to medical staff of injury to the fourth finger on his left hand, but upon examination it was assessed that Plaintiff presented only minor injuries, such as a small abrasion to his left upper eye lid, there was no bleeding, no obvious wounds, and no first aid administered. Dkt. No. 76 at p. 11. Plaintiff was able to flex his fingers and had no complaints with regard to headaches or problem with vision. *Id*. X-rays taken the following day of his left hand, right ankle, right arm, left shoulder, and orbitals were all normal. *Id*. at pp. 11-15

[4] Citations to the AHR are to those page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[5] That complaint, referred to in the AHR as a "PREA" allegation, which, upon information and belief is a reference to the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 *et seq.*, was assessed as not credible for several stated reasons, including the fact that Plaintiff had "multiple previous unsubstantiated PREA allegations," the cell extraction was video recorded with multiple staff witnesses, and the medical exam shows no trauma in the rectal area. *Id*.

highlighting this entry is because Plaintiff has offered multiple excuses for his failure to attend his deposition. Amongst those excuses are Plaintiff's claims that he was not allowed to leave his cell on February 17 because he was to be interviewed on his sexual assault claim and that he was told his deposition would be cancelled because of that interview. Notably, no one from the Office of Special Investigation, whom Plaintiff claims was going to interview him, nor from DOCCS notified the Defendants' Counsel of the need to cancel the deposition due to an impending investigation. And the fact that Plaintiff was apparently interviewed on **February 16**, and not **February 17,** further belies Plaintiff's version of events. Dkt. No. 79-7 at p. 3.

The final bit of evidence submitted by the Defendants to undercut Plaintiff's fallacious excuses is a video taken of the Great Meadow F Block Frisk Area on February 17, 2017, the date Plaintiff claims he was not allowed to leave his cell because he was to be interviewed about his sexual assault claim.[6]

The relevant portion of that video begins at 9:43:09 a.m., wherein Plaintiff is seen escorted into the room by three corrections officers and directed to face the wall. A fourth officer enters the room holding an exposure control suit,[7] which is then handed to Plaintiff, but Plaintiff refuses to put it on. In response, one of the corrections officers asks Plaintiff

---

[6] The Court notes that Plaintiff submitted a Letter-Motion seeking to be provided with a copy of that video. Dkt. No. 80. Based upon Plaintiff's Sur-Reply, it is clear that he had been provided an opportunity to review that video, Dkt. No. 82, thus his request is denied as moot.

[7] Plaintiff confirms in his Sur-Reply that the garment handed to him was an exposure control suit. Dkt. No. 82 at p. 2.

whether he will put the suit on and Plaintiff responds "no." The officer then seeks to confirm whether Plaintiff is refusing to go up, to which Plaintiff says "whatever",[8] and is then escorted out of the room.

In light of the Defendants' Reply papers, I find that Defendants have submitted wholly credible evidence which directly rebuts Plaintiff's ever evolving excuses for not attending the deposition. Contrary to Plaintiff's claim that he was told he could not leave his cell on February 17th until he was interviewed, Plaintiff was obviously taken out of his cell in the morning, incidentally right around the time of his scheduled deposition, and was directed to change into an exposure control suit so he could be taken somewhere. When he refused to put that garment on, he was asked to clarify if he was refusing to go. Plaintiff's attempts to both undermine the legitimacy of the Defendants' evidence and to utilize the video as a way of bolstering his stance that indeed he wanted to go to the deposition are unintelligible and untenable manipulations. Dkt. No. 82.

In his Sur-Reply, Plaintiff goes to great depths to explain his disagreement with and the legality of the use of the exposure suit, however, this only further bolsters the Defendants' stance that Plaintiff willfully refused to obey the Court's prior directive which warned him that his disagreement with "any directive of security staff at the correctional facility at which the deposition is scheduled is not a ground on which Plaintiff(s) may refuse to answer appropriate questions." Dkt. No. 25 at p. 5. In other words, whether or not

---

[8] It is difficult to ascertain Plaintiff's response in the video, however, the Plaintiff notes in his Sur-Reply that he responded "whatever", and the Court accepts that version. Dkt. No. 82 at pp. 2-3.

*-11-*

Plaintiff agreed with the use of the suit is not my concern. What is relevant is that he, without adequate notice or explanation, refused to obey the security dictates of the facility staff, and in doing so, disobeyed the Court's Mandatory Pretrial Discovery and Scheduling Order.

Incredulously, after admitting in his Sur-Reply that he adamantly refused to put the suit on, he claims that the video proves nothing and that it could have been a callout to anywhere, and not necessarily the deposition. Dkt. No. 82 at p. 6. Yet, this video was clearly taken at or around 9:43 a.m., on February 17, 2017. As noted above, the deposition was scheduled to start on that date at 9:30 a.m., and at 9:57 a.m., a mere fourteen minutes after Plaintiff refused to put on the exposure suit, Defendants' Counsel received telephonic notification that Plaintiff refused to attend.

Having reviewed all of the documentation submitted to the Court, I find that Plaintiff refused to attend his deposition because he disagreed with certain security restrictions imposed upon him. Instead of admitting to his behavior, Plaintiff attempts to obfuscate his true intentions by casting aspersions at Defendants' Counsel, and by offering a series of inconsistent excuses that couldn't possible all be true at the same time. As noted above, it is within the Court's power to sanction Plaintiff for his failure to attend and participate in his deposition in good faith. Prior to announcing the appropriate sanction to be imposed, the Court finds it prudent to further discuss the content of the papers submitted by Plaintiff in opposition to the Defendants' Motion.

### C. Plaintiff's Inappropriate Submissions

Defendants' Counsel was both charitable and restrained when she referred to the content of Plaintiff's submissions, and particularly his descriptions of women, as "chilling." Dkt. No. 79-7 at p. 6, n.1. It is more than that, it is abhorrent. And what is most disturbing is that the Plaintiff appears oblivious to the inappropriateness of his submissions, wherein he makes repeated references to "tight clothes"; "big booties"; his ability to see the panties of the court reporter; and his reference to one of the correctional facility's female medical providers as having a "crazy body such as big big big booty and hips some things that many people and men have alleged that they never saw before in any other races such as black and latina woman famous for them bodies such as booty and hips[.]" Dkt. No. 76 at pp. 22-23. Plaintiff scoffs at any suggestion that he has any problem with women and insists that his opposition papers merely reflect his exercise of his First Amendment right to free speech and contends that with his limited knowledge of the English language his words may be taken out of context. Dkt. No. 82 at p. 16. They were not.

Undeterred, Plaintiff then provides an addendum to his Sur-Reply wherein he regales the Court with anecdotal evidence that "in the real world, women [are] always or regularly used for evil purposes and instruments for to seduce to men and male judges for win cases and court tricks." *Id.* at p. 19. By way of example, Plaintiff explains how he read a newspaper article about law firms that employ "sexy" women as secretaries and lawyers who have nice bodies and are told to "dress very sexy" with "tight tight pants" so as to distract a male judge who will then rule in the law firm's favor. *Id.*

I am more than willing to educate Mr. Abreu on his misconceptions. Women constitute a fundamental pillar of the legal system in this country, and they deserve and are entitled to be treated with respect and courtesy. They are the stenographers; the bailiffs; the counsel; the clerks and deputies; the trial court judges; and members of the highest courts, both state and federal, who work every day to ensure that justice is done. In the face of this indisputable fact, Plaintiff's tirade of sexist and inappropriate comments simply has no place in legal submissions to the Court. Plaintiff's assertions against the Defense Counsel in this case are particularly baseless. Plaintiff takes great umbrage at the fact that AAG Paquette indicated in her Motion that Plaintiff's deposition must be completed by video. Dkt. No. 76 at pp. 22-29. In Defendants' Memorandum of Law, AAG Paquette explains that Plaintiff's deposition must be by video "given Plaintiff's well documented history of violence and propensity to be sexually inappropriate towards women." Dkt. No. 74-5 at p. 4. The records thereafter provided in Defendants' Reply lend credence to AAG Paquette's accusation, and support her determination to proceed by videoconference. *See generally* Dkt. No. 79.[9] In light of Plaintiff's discussion regarding women, I would direct that any deposition taken of him be completed by videoconference.

### D. Appropriate Sanction

Based on all of the above, I find that Plaintiff has improperly refused to participate in

---

[9] Such conduct typically includes Plaintiff jumping on his bed while masturbating and shouting out the particular female's name who walks by his cell. Indeed, after being transferred to Great Meadow on January 30, 2017, there were approximately six instances of this lewd and despicable conduct notated in Plaintiff's AHR during the month of February alone. Dkt. No. 79-4 at pp. 1-8.

his deposition, despite being ordered to do so, and has submitted inappropriate filings with the Court. This behavior cannot be countenanced. Plaintiff's behavior has invariably prejudiced the Defendants' ability to properly defend this matter. Defendants cannot be expected to combat Plaintiff's charges without the benefit of having his testimony recorded before trial. Plaintiff's conduct has also caused Defendants to incur unnecessary costs. Such costs include not only the stenographer fee, but also the fee for the interpreter, whom the Court directed be provided at Defendants' cost as an aid to Plaintiff.[10]

Considering all of this, especially the Plaintiff's derisive opposition, the Court could legitimately recommend dismissal as an appropriate sanction. *See Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) (dismissal against *pro se* litigants should be granted only when they deliberately frustrate the process, not when they do so through a misunderstanding); N.D.N.Y.L.R. 7.1(i) ("A party who presents vexatious or frivolous motion papers or fails to comply with this Rule is subject to discipline as the Court deems appropriate, including sanctions and the imposition of costs and attorney's fees to the opposing party."). However, I am obligated to first consider whether a less drastic sanction could reach the desired goal of imposing upon Plaintiff the importance of his cooperation in all matters of discovery, but most especially in his deposition. Weighing all the equities, the Court finds that the proper sanction would be to impose a monetary sanction against Plaintiff in the amount of $146.71, payable to the Attorney General's Office, in order to compensate

---

[10] Counsel indicates that the Office of the Attorney General incurred $77.80 in court reporter fees and $68.91 in fees for the interpreter as a result of Plaintiff's failure to appear for his depositions. Dkt. Nos. 79-5 & 79-6.

*-15-*

that Office for unnecessary fees incurred.

Because Plaintiff is proceeding in this matter *in forma pauperis*, it may well be the case that he cannot presently afford such a sanction. Wherefore, the Court recommends that this action be administratively closed pending proof that Plaintiff has paid his sanction in full. Upon such proof, the Court will direct the Clerk to reopen this matter and put it on the Court's active case docket. Should the District Court adopt this recommendation, and in the event the matter is administratively closed, there shall be no further filings by the Plaintiff in this matter until such time as proof of the payment of the monetary sanction is confirmed. In the event that this case is restored to the calendar, Plaintiff is forewarned that inappropriate submissions, or inappropriate conduct, will be met with a severe sanction. In addition, Plaintiff is once again cautioned that, should this case continue on the Court's active docket, he must comply with the discovery process in general, and depositions in particular, or face penalties which may include dismissal of his claim.

### III. CONCLUSION

**WHEREFORE**, after due deliberation and for the reasons stated above, it is

**ORDERED**, that Defendant's Motion to Dismiss and for Sanctions (Dkt. No. 74) is **granted in part** to the extent that the Court finds Plaintiff's disobedience of the Court's Order to be willful and the content of his filings to be vexatious and harassing; I therefore impose a monetary sanction of $146.71, which shall be submitted to the New York State Attorney General's Office; and it is further

**RECOMMENDED**, that this case should be administratively closed until such time

as proof of full payment is provided to the Court; and it is further

**ORDERED**, that Plaintiff's request (Dkt. No. 80) to be able to view the video attached to the Defendants' Reply is **denied as moot**; and it is further

**ORDERED**, that this matter is **STAYED** until the District Court has had an opportunity to review the recommendation for an administrative closure pending full payment of the monetary sanction; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the Plaintiff by certified mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[11] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, & 6(e).

Date: September 12, 2017
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[11] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).